Campbell, Chief Justice,
dissenting:
A contract is property for which compensation must be made when taken for public use. Omnia Commercial Co. v. United States, 261 U. S. 502, decided April 9, 1923; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 690; Cincinnati v. L. & N. R. R. Co., 223 U. S. 390, 400. In the Omnia Commercial Co. case the appellant owned a contract by which it acquired the right to purchase a large quantity of steel plate from the Allegheny Steel Company. The Government requisitioned the steel company’s entire production of steel plate for the year 1918 and directed that company not to comply with the terms of appellant’s contract. Appellant brought suit in the Court of Claims, alleging that the Government’s action was a taking of its property and that it was entitled to just compensation by virtue of the fifth amendment to the Constitution. The Supreme Court say: “ The contract in question was property within the meaning of the fifth amendment * * * and if taken for public use the Government would be liable.” See also upon the question of requisitioning contracts Russell Motor Car Co. v. United States, 57 C. Cls. 464; 261 U. S. 514.
It is not questioned that there are implied conditions under which contracts are made that may excuse performance or even produce their dissolution. Texas Co. v. Hogarth Shipping Co., 256 U. S. 619, 630. Nor is it denied that the subject matter of a contract is not the contract itself, so that ■one may be taken and the other left.
The question therefore is, Was there a taking, an appropriation by the Government, of plaintiff’s contract? The ■answer is to be found not alone in the communications of the Government’s authorized agent in the premises but in the direct effect of its action as well. It is undisputed that *300 plaintiff had a contract obligating the shipbuilder to construct and deliver a vessel according to specific plans and specifications upon definite terms; that the shipbuilder could have delivered the ship; that plaintiff would have paid for it; and neither the plaintiff nor the shipbuilder was in default in any particular when the requisition order was issued. The vessel in its uncompleted condition belonged to the builder. All the plaintiff had was a contract, under the terms of which it had made substantial payments to the builder. This was the status when, under date of August 3, 1917, the agency duly authorized to act for the Government served notice on the builder that the United States “ requisitioned ” all ships above 2,500 tons dead-weight capacity “ under construction ” in its yard, including material, machinery, equipment, and outfit necessary for their completion, and that the builder was required to complete the construction and to prosecute such work with all practical dispatch. The notice stated that “ the compensation to be paid will be determined hereafter and will include ships, material, and contracts requisitioned.” The builder was accordingly called upon to furnish immediately general plans and detail specifications of ships requisitioned, and copies of contracts, with full particulars as to the owner, date of completion, payments made, amounts still due, and all other information necessary to a determination of the obligations in taking over “ these ships and contracts.” On August 22 Mr. McDermott, who was acting for the Fleet Corporation, was directed to inform the shipbuilder to proceed in the work of completion in conformity “ with the requirements of the contract, plans, a/nd specifications wider which construction proceeded prior to the requisition of August 3, 1917, in so far as the said contract described the ship, the materials, * * * and survey thereof, including the meeting of the requirements of the said contract and all tests * * * on completion, and in so far as the contract contains provisions for the benefit and protection of the person with whom the contract was made, but not otherwise.”
Here we find a recognition of the contract and a direction; to proceed according to its provisions. The notice, however,. *301 went further. The builder was informed that “ for the wort of completion heretofore and herein ordered the corporation will pay to you amounts equal to payments set forth in the contract and not yet paid.” The Fleet Corporation made it plain that the order applied only to vessels actually under construction. These were requisitioned, they were to be completed according to the provisions of the contracts under which they had proceeded to their stage of completion, and payment was to be made upon the basis of the balance due under the contracts. When the Government’s requisition issued and required completion for its own benefit, agreeing to pay therefor the contract price, diminished, however, by the amount of the payments plaintiff had made, it is conceded that the uncompleted vessel was taken. But what became of the plaintiff’s payments and of the obligation of the contract ? In answering this question, it is important to note that a contract was made between the Fleet Corporation and the builder, which recited that on and prior to August 3 the builder was constructing under private contract with parties called “ former owners ” the ship in question at designated “ contract prices,” and that due to the war conditions “ such contract prices have proved and will prove to be less than the actual cost of constructing such ships,” and, among other things, stipulated that the builder would complete the vessel in accordance with “ the specifications annexed to the respective contracts under which such hulls were being constructed for the former owners prior to August 3,” but would comply with all orders as to alterations given by the Fleet Corporation. In payment the builder was to receive the entire cost of the construction, and in addition thereto “ten dollars per dead-weight ton for profit,” but it was added: “ There shall be credited, however, in favor of the Fleet Corporation all sums heretofore received by the shipbuilding corporation on account of the construction of such ten ships respectively, either from the former owners or from the Fleet Corporation.” In other words, the Fleet Corporation agreement was to have the vessel completed in accordance with plaintiff’s contract, plan, and specifications; to pay therefor plaintiff’s contract price (with a bonus added) and then, in settlement for the completed vessel, to *302 take credit to itself for the amounts plaintiff had paid. And this plan was consummated. Another provision of this contract was that the Fleet Corporation agreed to indemnify and save harmless the builder from any and all loss or liability occasioned by reason of the “ requisition order of' August 3,” or any subsequent acts or orders given by the Fleet Corporation “ arising out of claims of the formel owner.”
If the plaintiff had voluntarily assigned its contract with the builder to the Government, and the latter had expressly assumed the unfulfilled obligations and later received the completed vessel, it would not more effectively have acquired plaintiff’s contract, its rights, and obligations than actually resulted from what was done in this case. The Government requisitioned the incomplete vessel with the purpose of requiring the completion in accordance with the existing contract; it did require the carrying out of that contract (with slight modification); it took plaintiff’s right to have the vessel; it received the vessel and appropriated plaintiff’s partial payments thereon to its own use and benefit. The contract was performed; the vessel was delivered. I think the plaintiff’s contract was taken and appropriated.
Under the findings of fact it may be said that the Government evidently concluded that the reasonable cost of constructing a like vessel would be $10 per ton more than the contract price because it agreed to pay that much more after the requisition, and upon that basis the judgment could be increased at least in the amount thus ascertained.